IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES ROSEMOND,

            Petitioner,

    v.                                              Civil Action No. 5:21-CV-175
                                              (BAILEY)

RICHARD HUDGINS,
Warden, USP Hazelton,

            Respondent.

**RESPONDENT'S REPLY TO PETITIONER'S RESPONSE TO MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Respondent, by and through undersigned counsel, and replies to Petitioner's Response to Respondent's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment as follows.

Petitioner's frivolous hypothetical comparing a presidential staff meeting to a grant of executive clemency is not only unwarranted, but has no bearing on the facts of this case. Petitioner's affiant, Mr. James Brown, stated that "President Trump told the people in the room with him: 'Let's get this guy home for Christmas.'" Doc. 13-1. Mrs. Monique Brown alleges the same. *See* Doc. 13-2. Notably, however, neither affiant identifies *who* was "in the room" with the President or affirms whether these "people in the room" even *heard* the President's supposed statement. As explained below, upon closer examination, Petitioner's hypothetical actually *supports* Respondent's contention that the alleged statement in no way amounted to a presidential grant of clemency.

1

## ARGUMENT

    A.    **The former President's alleged statement – "Let's get this guy home for Christmas" – was neither public nor unambiguous.**

Petitioner maintains that "(a) an act of clemency need not take any specific form so long as the President communicated it publicly; (b) an act of clemency need not be phrased in any specific way so long as the President reasonably conveys the clemency decision; and (c) once an act of clemency is completed, it cannot be reversed." *See* Doc. 13 at PageID #239. Assuming the above criterion are binding, the alleged "verbal commutation" was neither public nor unambiguous.

    i.    **The former President's statements were not publicly communicated.**

Once again, Petitioner asserts without analysis or persuasive authority that the statement made by former President Trump was sufficiently public to amount to an "order" and grant of clemency. The nature of the communication and the affiants' failure to identify the "people in the room" make clear that the "verbal commutation" was not public.

Initially, it must be noted that Respondent in no way accepts Petitioner's factual allegations as true, but instead does not attempt to resolve contests surrounding those alleged facts as dismissal is appropriate at this stage of the proceeding. In the context of a Fed. R. Civ. P. 12(b)(6) motion, however, the district court need not accept unsupported legal conclusions couched as factual allegations. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). The declarations provided by Petitioner are exactly that and should be scrutinized by the district court. Petitioner provides no factual basis or context for his allegation that "President Trump told people in the room with him" to do something amounting to an "order to his advisors." Neither declaration identifies by name, title, or otherwise who was in the room. Neither declaration clarifies that the

2

"people" allegedly in the vicinity of President Trump heard the supposed order. Rather, Petitioner boldly asserts that Rosemond's grant of clemency was delivered by President Trump "point blank…to a room full of his advisors." Doc. 32 at PageID #394, 399.

In a strained attempt to analogize the purported December 2020 phone call between the affiants and former President to a presidential "order," Petitioner provides the district court with a very distinguishable hypothetical. In this story, the President "tells his team" during a "meet[ing] with a group of advisors" to schedule a meeting with the Vice President. Doc. 32 at PageID #394. The team fails to do so, and the President reacts "negatively." *Id*. The only portion of this hypothetical worth addressing is its clear identification of the meeting, the purpose of the meeting, and the meeting's participants. The hypothetical situation occurs during a meeting with advisors to discuss the Vice President's role in an upcoming treaty negotiation, and the meeting participants include a group of presidential advisors. *See Id*. Turning to the subject declarations, a reasonable person cannot discern whether any people, let alone presidential advisors, were present in the room with the former President during the December 2020 call.

The alleged statement, assuming the facts as alleged by Petitioner's affiants as true, occurred during a private phone call, and the affiants' had zero inclination who, if anyone, was present with the former President during the call. The statement therefore was unequivocally private, not public, and cannot be interpreted as a grant of presidential clemency.

        ii.       **The former President's statements were ambiguous and do not convey intent.**

According to Petitioner, the statement, "Let's get this guy home for Christmas," amounted to a presidential order, but, in reality, the statement has no legal effect and does not convey with any specificity or clarity that the President intended to grant clemency to Petitioner. There is no

3

indication that the former President directed any person, including any "people in the room," or entity, including the Federal Bureau of Prisons, to take any action whatsoever as to Mr. Rosemond.

Further, Petitioner's repeated reference to commutation of "Rosemond's *sentence*," without specifying *which* of Rosemond's numerous sentences was commuted, contributes to the ambiguity of the statement. The alleged statements by the former President do not specify which sentence(s) was to be commuted; how the sentence(s) was to be commuted, i.e., to time served or to a set number of years to be served; and/or whether any terms or conditions were to be placed on the grant of clemency. Accordingly, the alleged statements are ambiguous and cannot be construed as a grant of clemency.

Currently, Rosemond is serving the following sentences in two separate federal criminal cases:

    A.    *United States v. Rosemond*, Case No. 1:11-CR-424 (E. D. NY.) at Doc. 285:

        i.    life imprisonment as to Count 1;

        ii.    life imprisonment as to Count 3;

        iii.    life imprisonment as to Count 4;

        iv.    life imprisonment as to Count 5;

        v.    life imprisonment as to Count 6;

        vi.    life imprisonment as to Count 7;

        vii.    five (5) years as to Count 8;

        viii.    ten (10) years as to Count 9;

        ix.    twenty (20) years as to Count 10;

        x.    twenty (20) years as to Count 11;

   xi.  twenty (20) years as to Count 12; and

   xii.  twenty (20) years as to Count 13.

 B. *United States v. Rosemond*, Case No. 1:10-CR-431 (S. D. NY.) at Doc. 626:

   i.  life imprisonment as to Count 1;

   ii.  life imprisonment as to Count 2;

   iii.  twenty-five (25) years as to Count 3; and

   iv.  five (5) years as to Count 3.

In order for Petitioner to prevail, the district must find that the former President intended to commute each of Rosemond's eight (8) life sentences, in addition to eight (8) additional sentences equaling 125 years, and release Rosemond without any conditions whatsoever. The President's intent is key in a grant of clemency – whether he intends such a grant and if so, what its intended scope is. The warrant is used to memorialize that intent, and absent a warrant, a petitioner would need some equally clear indicia of the President's intent at the time clemency was allegedly granted. An alleged conversation with a third party, as is the case here, would not suffice.

Petitioner's assurance that a ruling in his favor will not overwhelm district courts with frivolous § 2241 petitions is disingenuous. Instead, Petitioner suggests, only incarcerated persons with the support of "high-profile people" and "indisputable access to the White House" will have the means to prevail in similar habeas cases. Doc. 32 at PageID #398. This argument should be rejected, and the Petition should be dismissed.

 **B.** **Petitioner fails to provide any explanation why the former President did not execute a warrant of commutation as to Mr. Rosemond.**

During Mr. Donald Trump's presidency, the former President granted 238 acts of clemency, including 144 pardons and 94 sentence commutations, between December 20, 2017 and

January 19, 2021.[1] As to each sentence commutation, the former President executed a warrant of commutation "designat[ing], direct[ing], and empower[ing], the Acting Pardon Attorney, as [his] representative, to deliver to the Bureau of Prisons, [to the sentencing court], and to the said [petitioner] a certified copy of this document *as evidence of my action in order to carry into effect the terms of this grant.*"[2] (Emphasis added). Each warrant included a specific directive to the BOP to effectuate the inmate's release.

Here, Petitioner claims he received a "verbal commutation" on December 18, 2020. *See* Doc. 13 at PageID #237-238. But almost contemporaneously with this alleged conversation, former President Trump issued five (5) commutation warrants on December 22, 2020 and an additional three (3) commutation warrants on December 23, 2020. Petitioner fails to explain why the former President did not issue a commutation warrant to Mr. Rosemond, despite having issued more than 70 additional commutation warrants within the month following the supposed December 18, 2020 phone call. The former President's actions do not evince an intent to commute Petitioner's any, let alone all, of Petitioner's federal sentences.

## CONCLUSION

No court has ever held that a President's conversation with a third party constitutes a grant of clemency, let alone a private conversation involving vague statements recounted only by declarations. The facts as alleged by Petitioner do not support a finding that the former President granted or intended to grant clemency to Mr. Rosemond. For the foregoing reasons, Respondent respectfully requests this Court to dismiss Petitioner's Corrected Petition for Writ of Habeas

---

[1] *See* https://www.justice.gov/pardon/clemency-statistics.
[2] *See* https://www.justice.gov/pardon/commutations-granted-president-donald-j-trump-2017-2021.

Corpus under 28 U. S. C. § 2241 [Doc. 13], or in the alternative, grant summary judgment in Respondent's favor.

                              WILLIAM IHLENFELD
                              UNITED STATES ATTORNEY

By:   */s/ Maximillian F. Nogay*
      Assistant United States Attorney
      W. Va. Bar # 13445
      United States Attorney's Office
      P.O. Box 591
      1125 Chapline Street, Suite 3000
      Wheeling, WV 26003
      (304) 234-0100 office
      (304) 234-0111 facsimile
      Max.Nogay@usdoj.gov

      */s/ Christopher J. Prezioso*
      Assistant United States Attorney
      W. Va. Bar # 9384
      United States Attorney's Office
      P.O. Box 591
      1125 Chapline Street, Suite 3000
      Wheeling, WV 26003
      (304) 234-0100 office
      (304) 234-0111 facsimile
      Christopher.J.Prezioso@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 22nd day of July, 2022, a copy of the foregoing RESPONDENT'S REPLY TO PETITIONER'S RESPONSE TO MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT has been electronically filed with the Clerk of the Court by using the CM/ECF system, which will provide a copy to all counsel of record.

By:   */s/ Maximillian F. Nogay*