IN THE UNITED STATES DISTRICT COURT
FORT HE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**JAMES ROSEMOND,**

                Petitioner,

v.                                   **Civil Action No. 5:21-CV-175**
                                                    Judge Bailey

**RICHARD HUDGINS**, Warden,
USP Hazleton,

                Respondent.

## ORDER GRANTING SUMMARY JUDGMENT

Pending before this Court are Respondent's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [Doc. 23] and Petitioner's Motion to File Amended Declarations [Doc. 36]. As an initial matter, petitioner's Motion [Doc. 36] will be granted.

This case is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, alleging that the then-President of the United States, Donald J. Trump, commuted petitioner's sentence to time served. The motion is based upon the Amended Declarations of Jim Brown and Monique Brown [Docs. 36-1 & 36-2].

The pending Motion seeking dismissal or summary judgment was referred to Magistrate Judge James P. Mazzone, who on August 16, 2022, issued his Report and Recommendation [Doc. 37] recommending that the Motion be granted. Mr. Rosemond timely filed his objections to the Report and Recommendation. See [Doc. 40].

1

## BACKGROUND

On April 5, 2012, a Superseding Indictment was filed in the United States District Court for the Eastern District of New York, charging petitioner with continuing criminal enterprise; conspiracy to distribute cocaine; two counts of attempted possession with intent to distribute cocaine; three counts of distribution of cocaine; firearms possession in connection with drug trafficking; felon in possession of a firearm; money laundering conspiracy; unlawful transactions over $10,000; structuring financial transactions; and obstruction of justice. Following trial, on June 5, 2012, the jury found Mr. Rosemond guilty on all thirteen counts. On October 25, 2013, Mr. Rosemond was sentenced to life imprisonment. Following an appeal, the sentencing court entered an Amended Judgment on January 20, 2015, dismissing count two; the sentence remained a total term of life imprisonment. See **United States v. Rosemond**, 1:11-CR-00424-ENV-4 (S.D. N.Y.).

On December 9, 2013, a superseding indictment was filed in another federal case, in the United States District Court for the Southern District of New York, charging petitioner with murder for hire conspiracy; murder for hire; firearms in possession during a murder for hire conspiracy; and murder through use of a firearm. The first trial ended in a mistrial on March 7, 2014. Petitioner was retried, and a jury convicted Mr. Rosemond on all counts on December 11, 2014. On appeal, the Second Circuit vacated the conviction. Mr. Rosemond was tried a third time, and on November 28, 2017, petitioner was again found guilty on all counts. On November 8, 2018, petitioner was sentenced to life imprisonment plus thirty years, with the sentence to run consecutively to the term of

imprisonment imposed in the Eastern District of New York. See **United States v. Rosemond**, 958 F.3d 111 (2nd Cir. 2020).

According to respondent, Mr. Rosemond is currently serving eight (8) consecutive life sentences.

## THE PETITION

In his petition, Mr. Rosemond claims that then-President Donald Trump commuted his sentence to time served on December 18, 2020. According to the petition and amended declarations, then President Trump called Jim and Monique Brown. Jim Brown is a former NFL running back, actor, and criminal justice advocate. Monique Brown, Jim's wife, is a director of a social justice organization. Both had supported Mr. Rosemond's efforts to obtain clemency and had submitted materials to President Trump regarding these efforts. According to Mr. Brown's amended declaration:

> 5. On December 18, 2020, President Trump called me and informed me that he had decided to commute Mr. Rosemond's sentence to the time he had already served in prison.
>
> 6. After a few minutes of introductory discussion, President Trump said: "I'm sitting here with counsel." President Trump told me that he had "looked at everything"—meaning the materials we had provided about Mr. Rosemond's case—and "believe you guys" that Mr. Rosemond's sentence should be commuted. President Trump said that "I want to do this" and "I'm gonna do it," referring to the commutation.

3

    7. President Trump then began speaking with other people in the room with him. I could hear several voices in the background in addition to the President's.

    8. President Trump said: "How soon can we get this done? I want this expedited right away."[1] I heard someone respond: "Right away." President Trump replied: "Good. I want this done. I want him home for Christmas."[2],[3]

[Docs. 36-1 & 36-2].

Despite this conversation, no record of clemency was sent to petitioner, the Browns, or the warden of USP Hazelton, and Mr. Rosemond remains incarcerated. President Trump left office on January 20, 2021, and no written record of commutation was created.

Petitioner argues that on the December 18, 2020 phone call, President Trump commuted his sentence to time served, and that he is therefore being held after the completion of his sentence and in violation of the Constitution. He argues that the form of an act of clemency does not matter so long as it is public and that the phone call sufficed; that the wording of the phone call reasonably conveyed the clemency decision; and that the act of clemency is irrevocable.

---

[1] If the grant of commutation were effective by oral statement, why would then-President Trump tell his people to get it done?

[2] Monique Brown's declaration is the same.

[3] Despite being in quotations, the words attributed to then-President Trump, differ from the initial declarations to the later declarations.

4

## STANDARDS OF REVIEW

### A. Motion to Dismiss

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is plausible on its face.' **Bell Atl. Corp. v. Twombly**, 550 U.S. 554, 570 (2007)." **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008).

When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995). In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," **Id.** at 555, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." **Id.** at 570.

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." **Williams v. Branker**, 462 F.App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one

for summary judgment." ***Witthohn v. Fed. Ins. Co.***, 164 F.App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. ***Id***. at 396–97.

### B. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." ***Anderson***, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); ***Celotex Corp.***, 477 U.S. at 323–25;

*Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249.

## Discussion

Magistrate Judge Mazzone indicated in his Report & Recommendation that a grant of clemency needed to be documented by a writing. This Court agrees.

In a 1929 memorandum from the Office of the Solicitor General, relied upon by the petitioner, Acting Solicitor General Alfred A. Wheat stated:

Neither the Constitution nor any statute prescribes the method by which Executive clemency shall be exercised or evidenced. It is wholly a matter for the President to decide, as a practical question of administrative policy. Nobody but the President can exercise the power, but the power having been exercised the method of making a record and evidence thereof is a mere detail which he can prescribe in accordance with what he deems to be the practical necessities and proprieties of the situation.

The important thing is to guard against the issue of spurious pardons. That ought not to be difficult. Then, too, custom and propriety require that the pardoned man be given some token to show that he has been pardoned. That need not have the President's autograph. If it shall bear the facsimile signature and be certified by an official having charge of the records as having been issued by the President, or by his direction, that will be sufficient. Indeed, **I would say that a mere certificate signed by the custodian of the records that a pardon had been granted would suffice.**

> The details can be worked out by those familiar with the practical necessities.
>
> To burden the President with the labor of signing the warrants is, as a matter of law, wholly unnecessary.

[Doc. 13-5 at 4–5] (emphasis added).

Magistrate Judge Mazzone added that "[i]n Wheat's view, the record of clemency, although distinct from the act of clemency, is necessary 'to guard against the issue of spurious pardons.' While the method of making the record is 'a mere detail' left to the President's discretion, there must be some record to serve as a token of the pardon. The proprieties must be observed." [Doc. 37 at 14].[4]

In fact, petitioner has failed to cite to any single circumstance where clemency was granted in the absence of a writing.

Petitioner cites to the fact that presidents have granted "many" clemencies without utilizing the Office of the Pardon Attorney. This does not mean, however, that a writing was not created.

Petitioner cites that the Department of Justice's statistics do not include individual members of a class of persons granted pardons by proclamation. Presidential proclamations are written documents.

Petitioner also cites to biographical work about President Abraham Lincoln [Docs. 13-3, 13-8 & 13-9], noting that in several instances the President granted pardons by "penning a few lines." In the author's recounting of President Lincoln's grants of

---

[4] The issue presented to Acting Solicitor General Wheat was whether the document evidencing clemency had to bear an original signature or whether a facsimile signature would suffice.

8

clemency, he does not indicate whether a writing was made. However, since the author wrote it in 1958, he clearly was not there to hear the words. A writing had to have been created.

Petitioner also argues that "'Presidents Ford and Carter granted clemency to hundreds of thousands after the Vietnam War, yet the only official notification that may have gone out to many of the intended recipients was a phone call.' Jeffrey Crouch, *The Toussie Pardon, "Unpardon," and the Abdication of Responsibility in Clemency Cases* 91 (2011) [Doc. 13-6] ("Crouch"). No one has scrutinized these calls to determine the number of participants or their identities. Instead, 'these individuals have been treated by the rest of the world as having been pardoned for three decades.' *Id.*" [Doc. 40 at 6]. This argument overlooks the fact that the grant of clemency to the Viet Nam "draft dodgers" was documented by a writing - Executive Order 11967. [abajournal.com/magazine/jan._21_1977_carter_pardons_vietnam-era-draft-dodgers].

Case law also supports the requirement of a writing. Petitioner has failed to cite a single case indicating that clemency may be granted in the absence of a writing.

In **United States v. Wilson**, 32 U.S. 150, 161 (1835), Chief Justice Marshall held:

A pardon is a deed, to the validity of which, delivery is essential, and delivery is not complete, without acceptance. It may then be rejected by the person to whom it is tendered; and if it be rejected, we have discovered no power in a court to force it on him.

Chief Justice Marshall added:

Hawkins says, § 64, "it will be error to allow a man the benefit of such a pardon, unless it be pleaded." In § 65, he says, "he who pleads such a

9

pardon must produce it *sub pede sigilli*, though it be a plea in bar, because it is presumed to be in his custody, and the property of it belongs to him. Comyn, in his Digest, tit. Pardon, H, says, "if a man has a charter of pardon from the king, he ought to plead it, in bar of the indictment; and if he pleads not guilty, he waives his pardon." The same law is laid down in Bacon's Abridgment, title Pardon; and is confirmed by the cases these authors quote.

32 U.S. at 162. Obviously, if one is going to produce the pardon, it has to be in writing.

In *re DePuy*, 3 Ben. 307, Fed. Cas. No. 3,814 (S.D. N.Y. 1869) presents a case where the issue was to whom the written pardon had to be delivered to be effective.

In ***Burdick v. United States***, 236 U.S. 79 (1915), the issue was whether the beneficiary of the pardon could refuse it. The pardon was in writing.

In ***Biddle v. Perovich***, 274 U.S. 480 (1927), the Supreme Court in an opinion written by Justice Oliver Wendell Holmes, Jr., dealt with a document, executed by President Taft, by which he purported to "commute the sentence of the said Vuco Perovich * * * to imprisonment for life in a penitentiary to be designated by the Attorney General of the United States." Again—a writing.

The purpose of requiring a writing is amply demonstrated by this case. The entire case would seem to turn on two affidavits filed by the Browns.

Of course, to be considered, affidavits must "contain admissible evidence and be based on personal knowledge." ***Evans v. Techs. App. & Serv. Co.***, 80 F.3d 954, 960 (4th Cir. 1996) (citing ***Williams v. Griffin***, 952 F.2d 820, 823 (4th Cir. 1991)).

The affidavits in question are based on hearsay, that is: a statement that a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c)(2). Hearsay is not permitted in affidavits. *Evans, supra* (citing ***Maryland Highways Contractors Ass'n v. Maryland***, 933 F.2d 1246, 1252 (4th Cir.), *cert. denied*, 502 U.S. 939 (1991); ***Byrd v. The Baltimore Sun Co.***, 279 F.Supp.2d 662, 670 n. 7 (D. Md. 2003) (Motz, J)).

This Court can find no exception to the hearsay rule which would permit the consideration of the affidavits. This Court even considered the catch-all or residual exception in Rule 807, but found that rule to be unavailing.

Rule 807 was amended in 2019 and provides in relevant part:

(a) In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

(1) the statement is supported by sufficient guarantees of trustworthiness--after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a).

11

"The hallmark of Federal Rule of Evidence 807 is that the hearsay statement sought to be admitted is trustworthy." *United States v. Lucas*, 836 F.App'x 142, 145 (4th Cir. 2020).

"The Fourth Circuit has long recognized that the residual exception is 'meant to be invoked sparingly,' and that the legislative history 'puts it more strongly,' stating: '"It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances."' *United States v. Heyward*, 729 F.2d 297, 299–300 (4th Cir. 1984) (quoting Fed. R. Evid. 803 Senate committee note) (other citations omitted); *see also United States v. Ealy*, 2002 WL 1205035, at *3 (W.D. Va. June 3, 2002) [(Jones, J.)] ('The residual hearsay exception is intended to be used rarely and only in exceptional circumstances.'). Likewise, the 'significantly streamlined' Rule 807 'is [still] intended to be a last resort.' *United States v. Smith*, 2020 WL 5995100, at *5 (D.D.C. Oct. 9, 2020); 30B Charles Alan Wright et al., *Federal Practice & Procedure* § 7066 (2021) ('All explicit signs of a desire to "expand" the use of the residual exception have been removed from the final Advisory Committee Note.... [T]he 2019 Amendments do not explicitly signal a desire to expand use of the residual exception.')." *City of Huntington v. AmerisourceBergen Drug Corp.*, 535 F.Supp.3d 542, 546–47 (S.D. W.Va. 2021) (Faber, S.J.).

Here, there is a lack of support by sufficient guarantees of trustworthiness. This Court is not questioning the integrity of the "high-profile" affiants. This case was assigned to a judge who is old enough to have watched Mr. Brown play football. But the Committee Notes to the 2019 amendments to Rule 807 state:

> In deciding whether the statement is supported by sufficient guarantees of trustworthiness, the court should not consider the credibility of any witness who relates the declarant's hearsay statement in court. The credibility of an in-court witness does not present a hearsay question. To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses. The rule provides that the focus for trustworthiness is on circumstantial guarantees surrounding the making of the statement itself, as well as any independent evidence corroborating the statement. The credibility of the witness relating the statement is not a part of either enquiry.

Fed. R. Evid. 807, Advisory Committee Notes, 2019 Amendments.

Accordingly, the statements in the affidavits may not be considered.

Inasmuch as there are no facts in dispute, there is no basis for an evidentiary hearing.

For the reasons stated above, this Court **ADOPTS** Magistrate Judge Mazzone's Report & Recommendation [**Doc. 37**], **GRANTS** Respondent's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [**Doc. 23**] and **GRANTS** Petitioner's Motion to File Amended Declarations [**Doc. 36**]. The Corrected Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [**Doc. 13**] is **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

The Clerk is directed to mail a copy of this Order to all counsel of record herein.

DATED: September 26, 2022.

                                                                    JOHN PRESTON BAILEY  
                                                                    UNITED STATES DISTRICT JUDGE